***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the deputy commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Commission, that the Commission has jurisdiction of the parties and of the subject matter of this case.
2. The employer/employee relationship existed between the employer and employee at all relevant times in this claim.
3. Defendant Wal-Mart is self-insured.
4. Employee's average weekly wage at the time of the claimed injury was $394.80, resulting in the maximum compensation rate of $263.33.
 EXHIBITS
The following exhibits were admitted into evidence at the hearing before the deputy commissioner:
1. Stipulated Exhibit Number 1A (Pre-Trial Agreement);
2. Stipulated Exhibit Number 1 (Medical Records);
3. Stipulated Exhibit Number 2 (Industrial Commission Forms);
4. Stipulated Exhibit Number 3 (Discovery Responses);
5. Defendant's Exhibit Number 1 (Recorded Statement).
 *********** ORDER
IT IS ORDERED that stipulated exhibit 3 which was omitted from the record shall be added to the record.
 ***********
Based upon all of the competent evidence from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the deputy commissioner, plaintiff was forty years old and had completed one and one-half years of college. At the time of the alleged injury on April 4, 2003, plaintiff was employed by the Goldsboro, North Carolina location of defendant-employer as a member of the inventory control team earning at least $9.87 per hour. Plaintiff had also been assigned to the grocery section, lawn and garden center, and pushed carts while working at the Goldsboro location. Plaintiff had worked at the Goldsboro location for approximately eighteen months and had previously worked for defendant-employer in Knightdale, North Carolina. Plaintiff served as a member of inventory control "off and on" prior to and after his transfer to the Goldsboro location. Plaintiff had worked for defendant-employer approximately three to four years.
2. Plaintiff was working for defendant-employer on April 4, 2003 on the 7:00 a.m. to 4:00 p.m. shift. During the week leading up to April 4, 2003, plaintiff and Acting Department Manager Betsy Brown had been rearranging grills in one of the trailers out behind the store. Plaintiff testified that he had been moving "quite a few" grills — "enough [grills] to fill up approximately two trailers." The grills were contained in boxes and ranged in weight from twenty-five to two hundred and twenty-five pounds. On April 4, 2003, plaintiff was rearranging grills on the trailer and was attempting to lift a box containing a grill when he felt a "twinge" in his back, which felt like a muscle pull. Plaintiff had lifted the box to his chest level and twisted to the left when he felt the twinge. The box weighed approximately seventy-five to one hundred pounds and plaintiff was attempting to lift the box without assistance. Plaintiff had been lifting boxes of grills "all day," without assistance, prior to experiencing the twinge in his back.
3. Plaintiff testified that he immediately notified Brown, who was working alongside him at the time that he thought he had pulled something and sat down for a break. Brown also took a break with plaintiff. After the break, they both went back to work moving boxes of grills. Plaintiff worked for another two hours.
4. After plaintiff went home, he started having trouble with his legs going numb (the left leg more so than the right leg) and getting a tingling and burning sensation in his feet. Plaintiff was also experiencing pain in the middle of his back.
5. Plaintiff went to work the next day, Saturday, April 5, 2003 at approximately 8:00 a.m. Plaintiff told Assistant Store Manager Steve Hogencapp about his back hurting. Hogencapp told plaintiff to go home. When plaintiff returned home, he sat in a tub of water for thirty minutes to one hour in an attempt to relieve what he thought was a pulled muscle. Plaintiff was unable to get out of the tub by his own efforts and his father had to assist him.
6. On Sunday morning, April 6, 2003, plaintiff's father took him to Pitt Memorial Hospital Emergency Room for treatment. The Triage Note printed at 5:12 a.m. indicates that plaintiff reported low back pain with an onset of 5-6 weeks prior, but the pain had "gotten worse today." Plaintiff also reported numbness in both legs. The physician's note indicates low back pain for 4-6 weeks, which became worse over the last 2 days and bilateral leg pains. Plaintiff gave the treating physician his medical history including prior diagnoses of fistulas and hidradentitis, but failed to state his injury may be work related. The treating physician examined plaintiff, had him x-rayed, prescribed medication, instructed him to follow up with his personal care physician in 5-7 days if he did not improve and released him to return to work in 1-2 days with restrictions of no kneeling or squatting. Plaintiff's x-rays showed "unchanged anterior wedging of L1 from film 2000."
7. After leaving the hospital, plaintiff's father drove him to the Kinston location of defendant-employer to have his prescriptions filled. Lisa Ezzell, who is the pharmacy manager at the Goldsboro store, was working in the Kinston store that day. Plaintiff told Ezzell that he hurt his back working in the trailers behind the Goldsboro store. Ezzell used the store-to-store line to call the Goldsboro store. Plaintiff used the line to speak with Kevin Kernack, a co-manager with defendant-employer. Plaintiff told Kernack he hurt his back working in the trailers. Kernack told plaintiff he needed to call Diane Smith on Monday.
8. On Monday night, April 7, 2003, plaintiff went back to Pitt Memorial Hospital complaining of back pain for 3 days. He rated his pain level as 9 on a scale of 1-10 with 10 being the highest level. Plaintiff was given 4mg of Morphine and transported by stretcher for an MRI. Plaintiff remained at the hospital after the MRI. His pain level increased and he was given additional Morphine and also Decadron. The MRI showed herniated disks at T8-T9, somewhat lateralized to the left side and a significant protrusion at T10-T11. Dr. Larry S. Davidson, a neurosurgeon, evaluated plaintiff and discharged him with instruction to follow up with him in a week for possible surgery. Plaintiff was discharged at 5:45 a.m. on April 8, 2000.
9. After leaving the hospital, plaintiff called back to defendant-employer, talked to Diane Smith and told her he hurt his back and was going out of work for a while. Smith told plaintiff he needed to come in and complete some paperwork. Smith arranged for plaintiff to be drug tested. Plaintiff completed the paperwork on April 9, 2003, which included a leave of absence and workers' compensation form.
10. Plaintiff's pain progression continued and he was seen at MedStat on April 9, 2003 where he was referred back to Dr. Davidson. On April 17, 2003, Dr. Davidson performed a two level discectomy on plaintiff.
11. Plaintiff was out of work starting April 5, 2003. Dr. Davidson ordered plaintiff out of work from April 15, 2003 until August 18, 2003 when plaintiff was released to perform light duty work with restrictions of lifting no more than twenty pounds. On August 18, 2003, plaintiff returned to work with defendant-employer at pre-injury wages. On September 24, 2003, Dr. Davidson released plaintiff with no restrictions. Dr. Davidson opined that plaintiff has a 6% disability rating as a result of his thoracic injury.
12. Plaintiff testified that he had a previous workers' compensation claim in the last ten years when he worked for Food Lion. The Food Lion claim involved plaintiff unloading a truck, slipping on spilled liquid bleach, landing on his elbow, and injuring his rotator cuff. In 1980, he had a farming accident where he fell in a barn and had a compression fracture of his lower spine, and an inured coccyx. In the prior ten years, he had been in a car accident and was treated by a chiropractor. Plaintiff testified all of the above-mentioned injuries had resolved prior to the April 4, 2003 injury in question.
13. Dr. Howard Robertson, a colon and rectal surgeon who is board certified in general surgery and colorectal surgery, testified that plaintiff had prior existing conditions of both fistula (abscess between the layers of muscle in the rectum) and hidradenitis (infection of sweat glands) in his groin area. Dr. Robertson treated plaintiff on December 10, 2002 for pain in plaintiff's anal area. Plaintiff returned to Dr. Robertson's practice on January 2, 2003, and was treated by Dr. Rebecca Cali. Prior to January 2, 2003, Dr. Cali had operated on plaintiff's anal abscess. Dr. Cali examined plaintiff on February 27, 2003 and determined plaintiff was "doing well from standpoint of anus." Plaintiff's medical notes taken by Dr. Cali on March 20, 2003 reflected "no anal pain." Plaintiff's medical notes taken by Dr. Cali on June 27, 2003 (after plaintiff's injury), reflected increasing pain in the anal area, but complaints of back pain. Plaintiff followed up with Dr. Robertson on July 1, 2003, and did not mention any back pain symptoms. Dr. Robertson testified that pain from anal fistula could feel like low back pain for a posterior fistula, but it was unlikely hidradentis would cause lower back pain. Dr. Robertson further testified that pain in the anal region would not normally extend into the thoracic spine area, and that plaintiff's fistula and hidradenitis were not work related.
14. After asking Dr. Davidson to assume facts given in a hypothetical question, plaintiff's attorney asked Dr. Davidson, "[D]o you have an opinion, satisfactory to yourself and to a reasonable degree of medical certainty, whether the work event occurring on April 4 of 2003, specifically lifting the grill, probably caused the injuries which you treated and which ultimately led to surgery?" Dr. Davidson answered, "Assuming that everything you have just mentioned is indeed true, it would be my medical assumption that his on-the-job injury of 04/04/03 should be implicated as the culprit of his thoracic disk herniation and his secondary symptoms thereafter." It is unclear from the evidence whether Dr. Davidson used "medical assumption" as a synonym or substitute for "medical opinion" and "culprit" as a synonym for "cause?"
15. Defendant-employer argues that plaintiff's testimony is not credible as he failed to immediately report his injury to his supervisor as mandated by defendant-employer's policy. Carmen Cronthamel, a risk management employee with defendant-employer testified that she was not aware of plaintiff reporting his injury to defendant-employer until Monday, April 8, 2003. Betsy Brown testified that she did not recall plaintiff telling her he pulled something on April 4, 2003 but plaintiff did tell her his back was "killing" him on April 5, 2003. Kevin Kernack testified he learned of plaintiff's injury on Saturday, April 5, 2003 when plaintiff called to say he would not come into work on either Sunday or Monday due to his injury. Randy Galloway, a former co-manager with defendant-employer testified he first learned of plaintiff's injury on April 8, 2003, when plaintiff called and informed Galloway he was not coming into work. Plaintiff's testimony that he immediately reported his injury to Betsy Brown, Acting Department Manager is accepted as credible. It is undisputed that plaintiff reported his injury within the time allowed by statute.
16. Defendant-employer further argues that plaintiff's testimony is not credible because his emergency medical notes are inconsistent from his testimony regarding the cause and onset of his injury. Specifically, the medical notes reflect that on April 6 7, 2003 at Pitt Memorial Hospital, plaintiff reported that 4-6 weeks prior, he stood up and felt something in his back pop and his back had not been "right" since then. In his medical history from the Emergency Room, plaintiff also reported a worsening of back pain over the last 1-2 days and bilateral leg numbness. The Commission finds the medical records from Pitt Memorial Hospital dated April 6, 7 8 2003, are internally inconsistent regarding plaintiff's history of back pain. The April 6, 2003 medical records report a snap in the back with pain onset five to six weeks earlier, which had worsened. The April 7, 2003 medical record indicates a history of onset of low back pain five days earlier and also repeats the history of a snap in the back and pain six weeks prior. The same April 7, 2003 medical record reports numbness and tingling in both legs and feeling as if dragging feet for three to four days which would have been consistent with the alleged April 4, 2003 injury. Little weight is accorded to the inconsistent histories found in the medical records. Plaintiff consistently reported worsening of back pain within the time period coinciding with his alleged injury. Dr. Davidson testified that if the disk herniation had occurred five to six weeks earlier, he would have expected plaintiff to present for medical attention at an earlier date.
17. Defendant-employer further argues that plaintiff's testimony that his injury is work related is not credible as plaintiff on a prior occasion related his back injury to helping his sister move on or about April 4, 2003. Plaintiff testified he had neither moved himself nor anyone else around the time of his injury on April 4, 2003. Plaintiff's sister, Taylor Seay Jones testified that plaintiff had not helped her move out of her home in the last three years. Plaintiff's father, Felix Seay testified that plaintiff did not help anyone move into his home. Carmen Cronthamel testified, however, that on April 8, 2003, plaintiff first told her he hurt his back helping his sister move the prior weekend, but later said he hurt his back at work. Betsy Brown testified that on April 5, 2003, plaintiff told her "he had to go wherever his sister was," but plaintiff did not tell her he hurt his back helping his sister move, nor did he say he had helped her move — "He just said he had to bring her back." Brown further testified, "I don't mean that he physically picked up her furniture and moved her into the house. He went down and got her. Apparently she called him and he went down and got her and the kids and brought them back to his house." Plaintiff's testimony that he did not help his sister move on or near April 4, 2003 is accepted as credible.
18. Based on the greater weight of the evidence, plaintiff has failed to prove by the greater weight of the evidence that the lifting incident on April 4, 2003 when he felt a twinge in his back caused the herniated disks for which he required surgery and was disabled from work from April 5, 2003, through August 18, 2003. Even though the greater weight of the "other evidence" supports plaintiff's claim that he sustained a work-related injury, Dr. Davidson's testimony that it would be his medical assumption that the work-related incident on April 4, 2003, "should be implicated as the culprit" of plaintiff's thoracic disk herniation is too speculative to meet plaintiff's burden of proof on causation.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that his disability is causally related to an injury arising out of and in the course of his employment as a direct result of a specific traumatic incident of the work assigned. Where there exists a causal relationship between the injury and the employment, the injury is compensable as work-related. Holley v. ACTS, Inc., 357 N.C. 228, 231,581 S.E.2d 750, 752 (2003). "[T]he [employee] must prove that the accident was a causal factor [of the injury] by a `preponderance of the evidence[.]'" Ballenger v. ITT Grinnell Indus. Piping, Inc., 320 N.C. 155,158-59, 357 S.E 2d 683, 685 (1987). The competency of expert opinion testimony for determination of causation in complicated medical questions (or those questions above the layman's ordinary experience and knowledge) turns on whether the opinion is based on mere speculation or conjecture.Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 915
(2000). In Holley, our Supreme Court explained that such expert opinion testimony must "`take the case out of the realm of conjecture and remote possibility' in order to constitute sufficient competent evidence tending to show a proximate causal relation between the injury and the work-related accident." Holley, 357 N.C. at 232, 581 S.E.2d at 753. Where the expert's opinion is that there "could" or "might" be a causal relationship, it is admissible if helpful for purposes of showing medical causation; however, it is not sufficiently reliable to constitute competent evidence of medical causation, especially if additional evidence suggests such testimony was merely a guess. Holley,357 N.C. at 233, 581 S.E.2d at 753. In the present case, plaintiff's onset of pain immediately upon picking up a grill is highly suggestive of injury and plaintiff's testimony concerning how his thoracic injury occurred is accepted as credible. However, Dr. Davidson's testimony that it would be his "medical assumption" that the work-related incident on April 4, 2003, "should be implicated as the culprit" of plaintiff's thoracic disk herniation is too speculative to meet plaintiff's burden of proof on causation.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits for an injury by accident to his back on April 4, 2003 is hereby DENIED.
2. Each side shall bear its own costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER